USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 3/7/2018

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X

DANIEL A. SANTANA,

                            Petitioner,

            -v-

THOMAS GRIFFIN, Superintendent,

                            Respondent.

------------------------------------------------------------X

17 Civ. 3827 (PAE) (KHP)

OPINION & ORDER

PAUL A. ENGELMAYER, District Judge:

    Petitioner Daniel A. Santana, proceeding *pro se*, brings a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Now before the Court are the December 13, 2017 Report and Recommendation of the Hon. Katherine H. Parker, United States Magistrate Judge, recommending that the Court grant respondent's motion to dismiss, Dkt. 15 (the "Report"), and Santana's objections to the Report, Dkt. 17.

    For the following reasons, the Court adopts Judge Parker's recommendation and dismisses this action.

**I.   Background**

    The following summary is drawn from the Report's account of the facts, to which neither party objects.

    On December 7, 1997, Carmen Maria ("Carmen") was killed during a home invasion. Both her sister, Jacqueline Maria ("Jacqueline"), and her sister's boyfriend, Enrique Morales ("Morales"), were present in the home at the time of the incident. Report at 1. The intruders bound all three individuals and tortured Morales before proceeding to pour acetone on Carmen's genitals, strike a match near her, and light her on fire. Carmen was left with extensive third-

1

degree burns and died from the injuries. *Id.* at 2. Morales and Jacqueline thereafter fled to the Dominican Republic and did not speak to police. *Id.*

In December 2006, a federal law enforcement agency informed the New York County District Attorney's Office that an individual in custody had information regarding Carmen's murder. *Id.* That informant identified Santana as one of the assailants responsible for the home invasion and Carmen's death. *Id.* On August 18, 2008, Santana was arrested; the following day, the informant and Morales both identified Santana in a lineup. *Id.*

In May 2011, before Santana's trial began, members of Santana's family attempted to locate Morales, his children, and Jacqueline, and threatened Morales's fiancée. *Id.* at 2. As a result, the trial judge issued a protective order (the "Protective Order") barring disclosure of the identities of, or any discoverable material relating to, Morales, Jacqueline, the informant, and a third Maria sister, Miguelina, until two days before their testimony. Report at 2; *see also* Dkt. 11-2. The identities of the witnesses and all related discovery were disclosed to defense counsel two days before the relevant witnesses' testimony, but the Protective Order prohibited Santana from retaining these documents or viewing them without his attorney present. Report at 3; *see also* Dkt. 11-2.

On June 13, 2011, a jury convicted Santana on two counts of second-degree murder, under depraved indifference and felony murder theories, and one count of first-degree kidnapping. Report at 3. On June 29, 2011, Santana was sentenced to three concurrent sentences of 25 years' to life imprisonment. *Id.* He is currently serving his sentence at Green Haven Correctional Facility in New York. *Id.* at 1.

On November 13, 2012, the Appellate Division, First Department affirmed Santana's conviction on direct appeal. *Id.* at 3.[1] On December 14, 2012, Santana filed for leave to appeal to the New York Court of Appeals; on June 10, 2013, his request was denied. *Id.* Santana did not file a petition for a writ of certiorari to the United States Supreme Court. *Id.*

On July 30, 2013, Santana filed before the trial court a motion to vacate the protective order, arguing he needed the protected materials in order to facilitate his bid for post-conviction relief. *Id.* On March 5, 2014, his motion was denied due to the court's continuing concerns about the safety of the protected individuals. *Id.*; *see also* Dkt. 11-8. Santana appealed, and the Appellate Division, First Department, denied his appeal. Report at 3.

On July 24, 2014, Santana filed a petition for a writ of habeas corpus in New York State Supreme Court, pursuant to Article 70 of the New York Civil Practice Law and Rules ("C.P.L.R."), claiming that his detention was unlawful because the Protective Order frustrated his continuing efforts to seek appellate and/or collateral review. *Id.* at 3–4; *see also* Dkt. 11-9.

---

[1] As relevant here, the Appellate Division held as follows:

> The [trial] court properly exercised its discretion in granting the People a protective order concerning some aspects of discovery. The order was based on valid concerns about the safety of witnesses (*see* CPL 240.50; *People v Ancrum*, 281 A.D.2d 295 [1st Dep't 2001], *lv denied* 96 N.Y.2d. 859 [2001]; *cf. People v Sweeper*, 122 Misc. 2d 386 [Sup. Ct. N.Y. County 1984]). In any event, under the protective order, defendant received the documents that were required to be disclosed under CPL 240.45 even before the deadline set forth in that statute. Furthermore, nothing in the order prohibited defense counsel from showing any documents to his client. Defendant has not substantiated his conclusory claims that his trial attorney needed more time to review the documents, or that defendant needed to have his own copies. Defendant did not preserve his procedural or constitutional claims regarding the factual basis for the protective order, and we decline to review them in the interest of justice. As an alternative holding, we reject them on the merits.

3

On April 21, 2015, the New York State Supreme Court denied his petition. Report at 4. Santana appealed to the Appellate Division, Fourth Department, but abandoned his appeal. *Id.* On March 24, 2017, his appeal was formally dismissed. *Id.*

On May 2, 2017, Santana filed the instant action, asking the Court to "determine whether the evidence was insufficient, as a matter of law, to sustain the conviction of felony-[m]urder." Dkt. 1 (the "Petition") at 15. On July 20, 2017, this Court referred the case to the Judge Parker. Dkt. 4.

On September 19, 2017, respondent filed a motion to dismiss, Dkt. 10, along with a memorandum of law arguing that the action was untimely under the one-year statute of limitations established by the Antiterrorism and Effective Death Penalty Act ("AEDPA"), *see* Dkt. 12 ("Resp. Mem."). On October 26, 2017, Santana responded to the motion, arguing the Petition was timely because AEDPA's statute of limitations was tolled while his petition for a writ of habeas corpus was pending in state court. *See* Dkt. 13 ("Santana Opp.").

On December 13, 2017, Judge Parker issued the Report and Recommendation, recommending that the Court grant the motion to dismiss on the ground that Santana's Petition was untimely. *See* Dkt. 15. On January 10, 2018, Santana filed his objections to Judge Parker's Report. Dkt. 17 ("Santana Obj.").[2]

Today, the Court resolves the motion by adopting Judge Parker's Report and Recommendation.

---

[2] Respondent has not challenged the timeliness of Santana's objections. In any event, the Report is sound under any standard of review.

## II. Discussion

After a magistrate judge has issued a report and recommendation, a district court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). To accept the portions of a report to which no timely objection has been made, "a district court need only satisfy itself that there is no clear error on the face of the record." *Acevedo v. Lempke*, No. 10 Civ. 5285 (PAE) (HBP), 2014 WL 4651904, at *3 (S.D.N.Y. Sept. 17, 2014) (quoting *King v. Greiner*, No. 02 Civ. 5810 (DLC), 2009 WL 2001439, at *4 (S.D.N.Y. July 8, 2009)). When a timely and specific objection has been made, the court is obligated to review the contested issues *de novo*. *See id.*; Fed. R. Civ. P. 72(b)(3); *Hynes v. Squillace*, 143 F.3d 653, 656 (2d Cir. 1998). But when the objections simply reiterate previous arguments or make only conclusory statements, the court reviews the report and recommendation for clear error. *Dickerson v. Conway*, No. 08 Civ. 8024 (PAE) (FM), 2013 WL 3199094, at *1 (S.D.N.Y. June 25, 2013); *see Kirk v. Burge*, 646 F. Supp. 2d 534, 538 (S.D.N.Y. 2009) (collecting cases). This is so even in the case of a *pro se* petitioner. *Cf. Molefe v. KLM Royal Dutch Airlines*, 602 F. Supp. 2d 485, 487 (S.D.N.Y. 2009).

Habeas petitions brought under 28 U.S.C. § 2254 are subject to a one-year statute of limitations, beginning on the latest of four possible dates:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

Pursuant to § 2244(d)(1)(A), the statute of limitations on Santana's federal habeas Petition began to run on September 8, 2013, 90 days after the New York Court of Appeals denied Santana leave to appeal. *See* Report at 5; Obj. to Report at 3–4; *see also Fernandez v. Artuz*, 402 F.3d 111, 112 (2d Cir. 2005) (conviction becomes final 90 days after leave to appeal is denied if petitioner does not seek a writ of certiorari from the United States Supreme Court). Santana filed this Petition on May 2, 2017, long after the one-year statute of limitations had run.

Nevertheless, Santana claims that his Petition was timely because the statute of limitations was tolled during the pendency of his state habeas petition—July 24, 2014 through March 24, 2017—pursuant to 28 U.S.C. § 2244(d)(2). *See* Santana Opp. at 3. That subsection, at the heart of the parties' dispute, provides: "The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." 28 U.S.C. § 2244(d)(2).

Respondent presents two arguments why the statute of limitations was not tolled under § 2244(d)(2). *See* Dkt. 12 at 2–7. First, Santana's state habeas petition did not seek review of "the pertinent judgment" (*i.e.*, his conviction and sentence), because the petition objected only to his having been denied access to certain trial documents during his direct appeal. *Id.* at 6. Second, the state habeas petition was not "properly filed" under New York law, because it failed to meet certain procedural requirements set forth in N.Y. C.P.L.R. § 7002(c). *Id.* at 6–7.

In view of the Supreme Court's and Second Circuit's interpretations of 28 U.S.C. § 2244(d)(2), the Court agrees with Judge Parker that each of respondent's arguments

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

Pursuant to § 2244(d)(1)(A), the statute of limitations on Santana's federal habeas Petition began to run on September 8, 2013, 90 days after the New York Court of Appeals denied Santana leave to appeal. *See* Report at 5; Obj. to Report at 3–4; *see also Fernandez v. Artuz*, 402 F.3d 111, 112 (2d Cir. 2005) (conviction becomes final 90 days after leave to appeal is denied if petitioner does not seek a writ of certiorari from the United States Supreme Court). Santana filed this Petition on May 2, 2017, long after the one-year statute of limitations had run.

Nevertheless, Santana claims that his Petition was timely because the statute of limitations was tolled during the pendency of his state habeas petition—July 24, 2014 through March 24, 2017—pursuant to 28 U.S.C. § 2244(d)(2). *See* Santana Opp. at 3. That subsection, at the heart of the parties' dispute, provides: "The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." 28 U.S.C. § 2244(d)(2).

Respondent presents two arguments why the statute of limitations was not tolled under § 2244(d)(2). *See* Dkt. 12 at 2–7. First, Santana's state habeas petition did not seek review of "the pertinent judgment" (*i.e.*, his conviction and sentence), because the petition objected only to his having been denied access to certain trial documents during his direct appeal. *Id.* at 6. Second, the state habeas petition was not "properly filed" under New York law, because it failed to meet certain procedural requirements set forth in N.Y. C.P.L.R. § 7002(c). *Id.* at 6–7.

In view of the Supreme Court's and Second Circuit's interpretations of 28 U.S.C. § 2244(d)(2), the Court agrees with Judge Parker that each of respondent's arguments

independently precludes Santana's reliance on AEDPA's tolling provision. Consequently, Santana's § 2254 petition must be dismissed.

### A. Santana's State Petition Did Not Seek Review of "the Pertinent Judgment"

Pursuant to AEDPA's tolling provision, only an "application for State post-conviction or other collateral review *with respect to the pertinent judgment or claim*" will toll the statute of limitations. 28 U.S.C. § 2244(d)(2) (emphasis added). In cases applying this provision, the phrase "pertinent judgment" has repeatedly been held to refer to the petitioner's conviction and sentence. *See, e.g., Collins v. Ercole*, 667 F.3d 247, 250 & n.3 (2d Cir. 2012). Further, the Supreme Court has held, this provision requires that the state petition seek "judicial reexamination of a judgment or claim in a proceeding outside of the direct review process" in order to toll the statute of limitations. *Wall v. Kholi*, 562 U.S. 545, 553 (2011). Accordingly, to trigger AEDPA's tolling provision, Santana's state habeas petition must have sought judicial reexamination of his conviction or sentence.

It did not. Santana's state petition targeted the Protective Order and how that order frustrated his ongoing efforts to secure meaningful appellate and collateral review. *See* Dkt. 11-9 at 10–16. The petition did not challenge the imposition of the Protective Order in the first instance, let alone seek reexamination of Santana's conviction or sentence.[3] Rather, Santana argued only that due process required that he be given access on appeal and at habeas to the information shielded by the Protective Order. *See, e.g., id.* at 10 ("The grounds for this petition are that Petitioner was barred from obtaining his trial transcripts to be able to submit a Supplemental Brief on behalf of his Direct Appeal . . . due to several protective orders the

---

[3] Indeed, as noted above, the Appellate Division had already rejected Santana's (unpreserved) challenge to the Protective Order on direct appeal. *See Santana*, 953 N.Y.S.2d at 590.

7

Prosecutor has utilized . . . to secretly remove all availability of obtaining any records and/or transcripts to help aid in Petitioner's perfecting Appeal and/or any Post-Conviction Motions . . . ."); *id.* at 11 ("[The Protective Order] impedes [Santana's] opportunity to perfect any type of Supplemental Briefs for his Direct Appeal, . . . Post-Conviction Motion(s)[, or] Federal habeas Corpus Issue."); *id.* at 13 (arguing that the Protective Order "removed any chance and opportunity of petitioner to receive a fair and impartial appeal review and Post-Conviction challenges").

To be sure, Santana's petition formally demanded his "immediate release," *id.* at 15–16, and suggested that if the Protective Order were lifted, Santana would "have an opportunity to confront his accusers and challenge the alleged information presented to the Criminal Court," *id.* at 10. But these arguments were derivative, flowing from the fundamental allegation that Santana's right to seek meaningful appellate and collateral review was being infringed. *See, e.g.*, *id.* at 15 ("[P]etitioner requests from the Supreme Court to grant his release from custody of [respondent] since prisoner cannot litigate without the due process needed to perfect anything in a Court of Law."). Hence Santana's continual use of forward-looking language, as when he argues that the Protective Order blocks access to documents he "*will need* to utilize to perfect any litigation to obtain his freedom." *Id.* at 12 (emphasis added); *see also id.* at 13 (arguing that with the Protective Order in place, Santana "will not be able to litigate for his release"). Accordingly, at bottom, Santana's petition did not challenge his underlying conviction or sentence, but instead challenged the continuing effect of the Protective Order in his efforts to seek review of his conviction.

A state habeas petition that does not seek reexamination of a conviction or sentence, but instead seeks material to facilitate a post-conviction challenge, is insufficient to toll AEDPA's

statute of limitations. *See Hodge v. Greiner*, 269 F.3d 104, 107 (2d Cir. 2001) (holding AEDPA tolling does not apply when the state petition exclusively "sought material [that] might be of help" in crafting a challenge to petitioner's underlying conviction). Courts in this District have applied *Hodge* in cases similar to this. *See, e.g., Franklin v. LaClaire*, No. 12-cv-4354 (LTS) (MHD), 2014 WL 5026102, at *2 (S.D.N.Y. Sept. 26, 2014) (post-conviction applications to obtain *Brady* materials did not trigger AEDPA tolling); *Gould v. West*, No. 05-cv-602 (RMB) (FM), 2007 WL 2609898, at *2 (S.D.N.Y. Sept. 7, 2007) (AEDPA's statute of limitations not tolled by motion to compel compliance with a FOIL request seeking material to aid in challenging conviction). *Hodge* likewise controls here: Because Santana's state habeas petition did not challenge his underlying conviction or sentence, but challenged only the availability of certain evidence on direct and collateral review, it did not toll AEDPA's statute of limitations.

### B. Santana's State Petition Was Not "Properly Filed"

Santana's bid for post-conviction relief fails for a second, independent reason: His state petition was not "properly filed" within the meaning of 28 U.S.C § 2244(d)(2). To toll AEDPA's statute of limitations, the state application for relief must have been "properly filed." 28 U.S.C § 2244(d)(2). A properly filed application must comply with "the applicable laws and rules governing filings," including those addressing "the form of the document, the time limits upon its delivery, the court and office in which it must be lodged, and the requisite filing fee." *Artuz v. Bennett*, 531 U.S. 4, 8 (2000) (footnote omitted).

In this case, Santana's state habeas petition was governed by New York law. New York imposes several procedural requirements on habeas petitioners. *See* N.Y. C.P.L.R. § 7002. Among these requirements, the petitioner must attach the mandate under which he is being detained and include an affidavit indicating whether he had brought any previous habeas

9

petitions. *Id.* at § 7002(c)(1), (6). Santana's application lacked both these materials. *See* Dkt. 11-9.

The Court agrees with Judge Parker that these omissions render the state petition improperly filed for purposes of AEDPA. In New York, a habeas petition is "defective" if it fails to "strictly comply with the requirements of C.P.L.R. § 7002(c)." *People ex rel. Chaney v. Dagostino*, 27 N.Y.S.3d 733, 733 (3d Dep't 2016). Accordingly, failure to comply with either C.P.L.R. § 7002(c)(1) or (c)(6) warrants dismissal of a habeas petition. *See, e.g., Chaney*, 27 N.Y.S.3d at 733 (dismissing petition for failure to attach a mandate); *People ex rel. Dunn v. McMann*, 255 N.Y.S.2d 189, 190 (3d Dep't 1965) (dismissing petition for failure to state whether a previous habeas petition had been filed). Because Santana failed to comply with C.P.L.R. § 7002(c), his petition was procedurally defective and therefore improperly filed under New York law.[4]

Because Santana's petition was not properly filed, it did not toll AEDPA's statute of limitations. *See Pace v. DiGuglielimo*, 544 U.S. 408, 417 (2005). Although neither the Supreme Court nor the Second Circuit has addressed the specific procedural defects here, both courts have explained that analogous defects preclude AEDPA tolling. *See Artuz*, 531 U.S. at 8 (listing examples of filing requirements necessary to proper filing including the proper "form of the document"); *Pratt v. Greiner*, 306 F.3d 1190, 1196 (2d Cir. 2002) (properly filed petitions must comply with state procedural requirements); *see also Simms v. Acevedo*, 595 F.3d 774, 779–80 (7th Cir. 2010) (state habeas petition missing documentation required by Illinois law was not

---

[4] That the state court accepted Santana's petition is of no moment. A state habeas petition may be considered on the merits and still not be properly filed. *See Artuz*, 531 U.S. at 9 ("If, for example, an application is . . . erroneously accepted without the requisite filing fee, it will be *pending*, but not *properly filed*.").

10

properly filed and therefore did not toll AEDPA's statute of limitations). And at least one court in this Circuit has held specifically that a failure to comply with C.P.L.R. § 7002(c) precludes AEDPA tolling. *See Martino v. Berbary*, No. 03-CV-0923S, 2005 WL 724133, at *3 (W.D.N.Y. Mar. 30, 2005) (failure to attach mandate required by § 7002(c)(1) rendered state habeas petition not "properly filed").

Accordingly, Santana's noncompliance with C.P.L.R. § 7002(c) allowed the statute of limitations to run during the pendency of his state action, thereby barring a federal habeas petition.

C. **Equitable Tolling**

Although applicable only in "rare and exceptional circumstances," equitable tolling permits a court to extend the statute of limitations when a finding of untimeliness would be inequitable. *Valverde v. Stinson*, 224 F.3d 129, 133 (2d Cir. 2000) (citations omitted). A habeas petitioner is eligible for equitable tolling if he has shown "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Pace*, 544 U.S. at 418. The petitioner bears the burden of showing both factors are present in his case. *Id.*

Santana has pursued his rights diligently. He has had some post-conviction petition pending at either the state or federal level consistently since his direct appeal was denied in 2012. And had his state habeas petition tolled AEDPA's statute of limitations, his federal habeas Petition would have been timely.

But Santana has not invoked, and the Court cannot identify, any extraordinary circumstance that prevented him from filing a timely action. The only obstacle to a timely filing here was Santana's apparent belief that his state petition tolled the federal statute of limitations. *See* Petition at 14. As explained above, however, this belief rested on multiple errors of law.

11

And in this Circuit, a *pro se* petitioner's unfamiliarity with or mistaken assumptions about the law do not amount to an extraordinary circumstance. *See Jenkins v. Greene*, 630 F.3d 298, 305 (2d Cir. 2010) ("Nor does that doctrine allow tolling whenever a petitioner must face the daunting procedural obstacles to obtaining habeas review without the assistance of counsel."); *Smith v. McGinnis*, 208 F.3d 13, 18 (2d Cir. 2000) ("[Petitioner's] *pro se* status . . . does not merit equitable tolling."). Accordingly, equitable tolling offers Santana no relief.

## CONCLUSION

For the foregoing reasons, the Court adopts Judge Parker's Report and Recommendation and grants respondent's motion to dismiss the Petition in its entirety. The Clerk of Court is respectfully directed to terminate the motion pending at Dkt. 10 and to close this case.

SO ORDERED.

Paul A. Engelmayer
United States District Judge

Dated: March 7, 2018
New York, New York